(No. 5424. July 28, 1930.)

H. H. BOOMER, Appellant, v. JAMES ISLEY and L. ISLEY, Respondents.

[290 Pac. 405.]

E. H. Casterlin and E. W. Whitcomb, for Appellant.

L. F. Glennon, for Respondents.

VARIAN, J.—This is an action on a promissory note formerly secured by chattel mortgage on approximately 1,100 head of sheep, not including accretions, increase or

wool. Appellant alleged the sale of the mortgaged property, and application of the proceeds thereof to the mortgage indebtedness, by consent of defendants, and prayed for judgment for a balance of $17,342.26, interest, and attorney's fees. The answer denies the sale of the property as alleged in the complaint, or that the security has become valueless, or that any sum is owing on account of said promissory note, etc., and sets up two affirmative defenses: First, that appellant took the mortgaged property and sold it without respondents' consent, without accounting therefor, and that no proceedings were had as for the foreclosure of chattel mortgages; second, that subsequently appellant released respondents from all indebtedness, of every nature, in consideration of respondents' surrendering possession of a certain ranch in Lemhi county and canceling an agreement to purchase the same from appellant. The cause was tried in Lemhi county, resulting in a verdict for defendants, in 1923. A new trial was ordered, which was affirmed by this court on appeal. See *Boomer v. Isley,* 42 Ida. 547, 47 A. L. R. 578, 246 Pac. 966, where a more comprehensive statement of the pleadings will be found. On the cause being remanded, a change of venue was had to Twin Falls county in the Eleventh Judicial District. The cause was there tried with a jury, the Hon. Wm. A. Babcock presiding, again resulting in a verdict and judgment for defendants. A motion for a new trial was made and denied. Plaintiff appeals from the judgment and order denying a motion for a new trial.

The first assignment of error, argued under practically five heads, is to the effect, first, that the evidence is wholly insufficient to sustain the verdict, in that it does not show that the sheep in controversy were taken and sold by appellant as his own, without the consent of respondents, or without following the statutory procedure relative to sale of mortgaged chattels, but that the evidence is conclusive that the sheep were sold by respondents; second, that there is no evidence that Hale and McKinney were acting as agents

for appellant; third, that the evidence is insufficient to show that the contract alleged in the second defense was ever made as alleged therein or at all; fourth, that the evidence is conclusive that Isley agreed to surrender the land at a conference held on the premises, Boomer, Isley and Monroe being present, in October, 1921, and that the surrender was made accordingly, with permission given by Boomer to Isley that he remain on the premises until other arrangements could be made by him; fifth, that there is no evidence that respondents' relinquishment of the lands would likewise cancel the balance due on the note sued on in the present action.

Appellant and respondent Isley had had business relations for twenty years. The former was a railroad contractor, residing at Spokane, Washington, and Isley had at one time worked for him and had held subcontracts under him. Appellant had for years, at different times, loaned respondent money. Isley on December 15, 1914, entered into a contract with Boomer for the purchase of 446.75 acres of land in Lemhi county, Idaho, for which he agreed to pay $20,500, in instalments, with interest at six per cent per annum, the last instalment falling due January 1, 1929. Isley went into actual possession of these lands, and remained in possession thereof until the fall of 1922, when he surrendered possession to one Babcock, to whom Boomer had conveyed the land. On February 1, 1918, Boomer loaned Isley $20,050, evidenced by a promissory note bearing interest at the rate of eight per cent per annum, executed by respondents, and secured by a chattel mortgage dated February 19, 1918, on approximately 1,100 head of sheep. No mention is made in the mortgage of accretions, wool or increase, but the pleadings of both parties are to the effect that they were not covered by the mortgage.

It is not disputed that the mortgaged sheep, including their lambs, were leased in May, 1920, to one Hale, who agreed to market the lambs when ready in August, and run the sheep for forty per cent of the lambs; that Isley delivered

the sheep and lambs to Hale at Salmon, Idaho; that thereafter Peter McKinney, manager for two corporations owning sheep, in which he and Boomer were the principal stockholders, received the sheep and lambs from Hale and shipped them to North Dakota; that the lambs were shipped from there and sold on the Chicago market, and the mortgaged sheep were afterwards sold in North Dakota; that Hale likewise delivered the wool shorn from said sheep to McKinney, who shipped and sold it with wool owned by his companies; that the proceeds of these sales of sheep, lambs (sixty per cent thereof), and wool, aggregating $5,684.69, were remitted by McKinney to Boomer's office in Spokane, and credited on the sheep note; that in 1919 Isley had paid Boomer $1600 on account of interest on this note; that no further payments were made on said note, which was never marked canceled or returned to Isley.

The evidence is conflicting as to whether Hale leased the sheep from Boomer or Isley, or they were delivered by Isley to Hale at Boomer's demand, or McKinney had any agreement with Isley for the shipping and sale of the sheep, or Hale and McKinney were agents of Boomer or of Isley in the sheep transactions, or whether they made any report to Isley of the sale and disposition of the proceeds of the sales of the sheep, lambs and wool, or whether Isley afterwards ever acknowledged his liability on the sheep note for the amount remaining after crediting the items mentioned.

We conclude, after a careful consideration of the record, that there is sufficient evidence to sustain respondents' contention that appellant took the sheep and sold them without following the statutory procedure prescribed for the foreclosure of chattel mortgages, and without respondents' consenting to the sale as made. He therefore cannot recover the deficiency under prior holdings of this court. (*Boomer v. Isley, supra; First Nat. Bank v. Poling,* 42 Ida. 636, 248 Pac. 19; *Garrett v. Soucie,* 46 Ida. 289, 267

Pac. 1078.) It follows that there was sufficient evidence to sustain respondents' first affirmative defense.

As to the second affirmative defense, the following facts are uncontradicted, viz., the execution of the contract; Isley's possession of the land; that he had made payments on account of the purchase price; the amount of the purchase price; that Isley was in arrears with his payments in 1921; that it was agreed to rescind the contract; that late in the year 1922 he delivered possession of the land to Babcock, purchaser thereof from Boomer, together with the crop for the current year consisting of 350 tons of hay and about 2,000 bushels of grain; that the rescission agreement was oral; that Isley never demanded or received a release or cancelation agreement, or the return of the original agreement or a note for $5,000 given as "security" for the contract by Isley.

The evidence as to the terms and date of the rescission agreement is squarely conflicting, and turns upon oral conversations embodying the agreement. Respondents also offered testimony that the land was worth at the time about $50,000. Again, we find sufficient evidence to sustain this defense, and that the parties agreed at Salmon in May, 1922, that appellant having a chance to sell it, the land was turned over to appellant's purchaser with the understanding that all indebtedness was canceled between the parties, although nothing was said about the sheep indebtedness, and that the land and crop were surrendered with that understanding. Boomer contended that the rescission agreement was made in October, 1921, and contemplated the settlement of the land deal only, and introduced evidence supporting his contention. The first assignment of error, therefore, comes squarely within the rule to the effect that where the evidence is conflicting and there is substantial evidence to support the verdict, it will not be set aside. (*Chapman v. Rivas*, 39 Ida. 718, 229 Pac. 745; *Kelly v. Arave*, 41 Ida. 723, 243 Pac. 366; *Elson v. Jones*, 42 Ida.

349, 245 Pac. 95; *LaRocque v. Alho,* 43 Ida. 405, 252 Pac. 675.)

The next error assigned is that the verdict is general, and inasmuch as the respondents claim satisfaction of the debt upon two grounds, i. e., the sale of the mortgaged property without consent or following the statutory foreclosure procedure, etc., and a general release by appellant, the verdict does not show it is returned on account of both or either of said defenses. Appellant contends that two inconsistent defenses are set up which required the jury to render separate verdicts, and, having rendered a general verdict, it cannot be ascertained therefrom whether three-fourths of the jury agreed that defendants had established either defense. Strictly speaking, the two defenses are not inconsistent, but are separate defenses upon which the jury might have found separate verdicts. Having failed to make timely objection to the form of verdict submitted, or to request that separate verdicts be returned, appellant has waived his objection to the verdict. See *Blackfoot Stock Co. v. Delamue,* 3 Ida. 291, 29 Pac. 97, and *Knollin & Co. v. Jones,* 7 Ida. 466, 63 Pac. 638, holding that objection to the form of verdict must be made in the trial court before judgment, or before the jury is discharged (*Pedersen v. Moore,* 32 Ida. 420, 184 Pac. 475; *Kuhl v. Supreme Lodge,* 18 Okl. 383, 89 Pac. 1126; *Innes v. Hay,* 28 Wyo. 274, 203 Pac. 1091), or before the verdict is received and recorded (*Johnson v. Fraser,* 2 Ida. 404, 18 Pac. 48; 2 Cal. Jur., p. 282), in order that the error may be corrected. It is too late to raise the question for the first time on motion for a new trial or on appeal. (See 38 Cyc., p. 1904; 24 Cal. Jur., p. 895; 2 R. C. L., p. 86, sec. 62; 27 R. C. L., p. 853, sec. 26; *Campbell v. First Nat. Bank,* 13 Ida. 95, 88 Pac. 639; *In re Hellier's Estate,* 169 Cal. 77, 145 Pac. 1008.) "When a general verdict is submitted to the jury, and no special verdict is requested, a general finding for either party is sufficient." (*Tannahill v. Lydon,* 31 Ida. 608, 173 Pac. 1146.)

There is no evidence from which it might be concluded that the jury in this case might have reached a verdict under the influence of passion and prejudice.

The following assignments of error refer to alleged errors of law occurring at the trial, which we will briefly consider. The first relates to the admission of testimony as to the value of the lands held under contract from Boomer by Isley, it being contended that such testimony was immaterial and tending to prejudice appellant. Under the theory of respondents that they consented to a rescission of the contract for the sale of the lands and delivered up the possession thereof to Babcock, the purchaser from Boomer, including the standing crops, in return for a cancelation of all indebtedness due from Isley to Boomer, this testimony was proper and relevant.

Counsel having stipulated that the witness Shattuck, if present, would testify to certain values, but objecting to his testimony as being irrelevant, cannot now object to the testimony because there was no opportunity to cross-examine, and no showing that the witness could not be produced at the trial. The objection comes too late.

Appellant complains that the trial court admitted evidence of value of the real property for a single purpose, but failed to instruct the jury to that effect. Assuming such an instruction necessary, in view of the statement of the court at the time as to the purpose for which the evidence was admitted, appellant tendered no instruction on the point. This court has laid down the rule in damage cases that where a party desires other instructions than those given on the question of damages, he must offer them at the trial, otherwise, error cannot be predicated on the failure of the trial court so to instruct. (*Joyce Bros. v. Stanfield,* 33 Ida. 68, 189 Pac. 1104; *Lessman v. Anschustigui,* 37 Ida. 127, 215 Pac. 460.) As to instructions generally, "if instructions given are correct as far as they go, it cannot be assigned as error that the court omitted to instruct on all points involved in the case if the attention of the court has

not been directed thereto by special requests for instructions on those points." (3 C. J., p. 850, sec. 756.)

Appellant complains of the statement of the court in its instruction No. 1, defining the issues, to the effect that respondent Isley turned over crops of the value of $4,000 to Babcock, because such fact is not alleged in the second affirmative defense. The jury was instructed that instruction No. 1 contained what the parties claimed to be the facts. The matter complained of was specifically pleaded in the second affirmative defense in the amended answer. This assignment, therefore, is without merit.

The court instructed the jury:

"If you find from the evidence that the defendants have proved either or both of their said affirmative defenses by a preponderance of the evidence, then your verdict should be for the defendants."

Appellant assigns this as error, on the theory that there is no evidence to sustain the first affirmative defense. We have concluded that there was sufficient evidence, as shown by the record, to sustain the verdict as to each affirmative defense.

It is finally urged that the court erred in not granting appellant a new trial herein. This assignment will not be considered, as the transcript does not contain the certificate required by rule 21 of this court, as to what papers, records and files were used and considered by the trial judge on the hearing of motion for a new trial. See *Brooks v. Lewiston Business College,* 48 Ida. 71, 282 Pac. 378, *Douglas v. Kenney,* 40 Ida. 412, 233 Pac. 874, *Spencer v. John,* 33 Ida. 717, 197 Pac. 827, and *Glenn v. Aultman & Taylor Machinery Co.,* 30 Ida. 719, 167 Pac. 1163, where the Idaho cases are cited.

Judgment and order affirmed. Costs to respondents.

Givens, C. J., and Budge, Lee and McNaughton, JJ., concur.